**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| MAVIS J. MASSEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 06 C 6819 |
| v. | ) | |
| | ) | |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | ) | Judge Rebecca R. Pallmeyer |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Mavis Massey sought disability benefits from the Social Security Administration, claiming that she was unable to work to due her diabetes mellitus, hypertension, and eczema. Following a hearing, an Administrative Law Judge concluded that her medical conditions were not severe enough to be disabling, and this became the Commissioner of Social Security's final decision after the SSA denied Massey's Request for Review. She now seeks judicial review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g). For the reasons explained below, the Commissioner's decision is affirmed.

## BACKGROUND

Massey applied for disability insurance benefits from the SSA on February 23, 2004, claiming that she was unable to work due to a combination of high blood pressure, diabetes mellitus, high cholesterol, and skin problems. (R. at 10, 61.) The SSA denied her claim for benefits, as well as her request for reconsideration, on the ground that her medical condition was not severe enough to be considered disabling. (R. at 22, 26, 31.) Massey then sought a hearing before an Administrative Law Judge. (R. at 35.) On July 11, 2006, she appeared with counsel before ALJ Janice Bruning and presented the following evidence. (R. at 168.)

Massey was born on April 11, 1945. (R. at 76.) She has a GED certificate and claims to have completed four or more years of college by 1965.[1] (R. at 67.) She worked as a Certified Nurse's Aide ("CNA") from June 1975 until November 2002, when she claims her eczema made it impossible for her to keep working.[2] (R. at 62, 171, 175-76.) The duties of a CNA involve touching and lifting patients. (R. at 176.) Massey does not claim to have become disabled by eczema, however. Rather, she testified that she stopped working as a CNA because she could no longer lift and touch patients, but that she was still "all right" otherwise at that time.[3] (R. at 176.)

At the hearing, Massey's attorney admitted that her eczema was not a severe impairment. (R. at 176.) He asserted, however, that her diabetes had worsened significantly in January 2005, after the SSA had denied both her initial application for benefits and her request for reconsideration.[4] (R. at 31, 176.) Massey testified that, at the beginning of 2005, her diabetes worsened, causing increased fatigue, knee pain, swelling in her right hand, weakness in her left hand, and swelling in both of her feet. (R. at 173-75.) She also testified that she took medication

---

[1] The unusual timing (Massey would have been twenty years old in 1965) is not explained in the record.

[2] "Eczema is a general term for any type of dermatitis or 'inflammation of the skin.' . . . All types of eczema cause itching and redness, and some will blister, weep, or peel." National Eczema Association, *All About Atopic Dermatitis*, NationalEczema.com, http://www.nationaleczema.org/lwe/aboutad.html (last visited June 27, 2008).

[3] This testimony was inconsistent with the assertion in Massey's February 2004 application for benefits that she became unable to work due to illness on November 30, 2002 (the date on which she stopped working as a CNA). (R. at 61, 69.) Massey later revised her claim to reflect an onset date of January 1, 2005. (R. at 10, 174, 176; Pl.'s Mem. [13] at 4.)

[4] Massey did not testify as to any increase in the severity of her hypertension at this time. Nor is any increase in her blood pressure, or other new complication arising from hypertension, indicated in her medical records. In fact, her blood pressure appears to have improved from 2004 to 2005. (*Compare* R. at 147 (record indicating blood pressure of 116/82 on 4/18/05) *and id.* at 136 (indicating pressure of 104/68 on 1/4/05) *with id.* at 132 (indicating pressure of 130/86 on 5/8/04) *and id.* at 116 (indicating pressure of 128/90 on 2/7/04, 146/94 on 11/1/03, and 146/96 on 8/9/03).)

which moderated the swelling, but did not eliminate it. (R. at 174-75.)

Massey claimed that the fatigue, pain, and swelling severely limited her activities of life. She testified that she could not walk more than a block, that she was unable to climb stairs, and that she could not stand for more than two or three minutes at a time. (R. at 177, 183.) She also stated that she was unable to lift any weight, and that although she could hold a spoon, she had frequently dropped coffee cups because she had difficulty gripping them. (R. at 178, 185.) Massey claimed that she required three rest periods each day, including two short rests in the morning and evening of about fifteen to thirty minutes, and a long nap in the afternoon of about two hours. (R. at 181-82.) She also claimed to be unable to sit upright for more than five or ten minutes without back pain, and claimed to be in pain from sitting during the hearing. (R. at 184-85.)

The only medical evidence submitted by Massey for the period in early 2005—when she claimed to have become disabled—was a series of medical reports from Aunt Martha's Medical Clinic in Aurora, Illinois. (Pl.'s Mem. at 5; R. at 133-150.) These reports are handwritten and brief. In the first report, dated January 4, 2005, a nurse, whose name is illegible, noted that Massey had "DM [diabetes mellitus] — uncontrolled." (R. at 135.) The nurse continues, however, by noting that Massey stated she was "doing well," and although the nurse noted that Massey was unable to hold objects due to pain in her fingers, and that she experienced "pain in back of neck when [she performed] housework," there was no reference to knee or back pain, extreme fatigue, foot-swelling, or an inability to sit or stand for any length of time. (R. at 135-36.) Furthermore, on another portion of the report, the nurse listed Massey's general pain level as a zero on a 0-10 scale.

The same nurse appears to have written another report about Massey on January 28, 2005. (R. at 137-38.) Although this report notes that Massey was suffering from bronchitis, it makes no mention of any fatigue or swelling, and it again rates Massey's pain at zero on a 0-10 scale. (R. at 137.) A follow-up report, written by a different unidentifiable nurse on February 7, 2005, notes that Massey stopped her bronchitis treatment after three days, but does not identify any significant

3

new limitations on her quality of life due to her diabetes, and once again lists her pain as a zero on the 0-10 scale. (R. at 139-40.) Further reports from February through July of 2005 from the same clinic tell a similar story, generally indicating that Massey was failing to properly control her diabetes,[5] without listing any new or aggravated limitations on her functioning or noting any significant pain or fatigue. (R. at 141-50.) Massey offered no explanation for the discrepancy between her testimony and the medical evidence, either in the proceedings before the ALJ or in her submissions to this court.

On August 14, 2006, the ALJ issued her opinion. The ALJ concluded that Massey was not entitled to benefits because she did not have an impairment, or a combination of impairments, that significantly limited her ability to perform basic work activities, as required by 20 C.F.R. § 404.1520(c). (R. at 12-13.) The ALJ first noted that the SSA's medical consultant had reviewed Massey's records and had concluded, on April 28, 2004, that her diabetes and hypertension were not severe impairments. (R. at 13, 121.) Next, the ALJ noted that Massey had made diabetes the focus of her claim, given that she had admitted that her eczema was not severe, and did not contend that her hypertension was a severe impairment. (R. at 13.)

The ALJ rejected Massey's claim because she concluded that Massey's testimony regarding the severity of her symptoms was not credible. The ALJ pointed out that, although Massey claimed to be unable to sit for more than five to ten minutes, she had shown no signs of discomfort while sitting through a hearing lasting more than thirty minutes. (R. at 14, 184.) Furthermore, the ALJ noted that Massey's allegations of severe fatigue and inability to care for herself were "out of proportion to the medical record." (R. at 14.) In April 2004, Dr. Narendra Garg, Massey's treating physician, noted Massey's report of "recurrent or persistent fatigue," but concluded that she had

---

[5] On February 22, 2005, Nurse Saldañama described Massey as "noncompliant," which suggests that Massey was unwilling, rather than unable, to control her diabetes. (R. at 142.)

"no physical limitations," and the ALJ noted that "there is no indication that this has changed." (R. at 14, 118.) Having rejected Massey's testimony, the ALJ concluded that "there is no evidence that the claimant has a severe impairment or [a] combination of severe impairments." (R. at 14.)

Massey requested that the SSA review the ALJ's decision, and the SSA declined to do so. (R. at 4.) The ALJ's decision then became the final decision of the Commissioner of Social Security. (R. at 4.)

## ANALYSIS

Both Massey and the Commissioner have moved for summary judgment. Massey argues that the ALJ erred by finding that she was not credible and by concluding that she was not severely impaired. (Pl.'s Mem. at 8-9.) The Commissioner argues that the ALJ's findings should be affirmed.

### I.      Legal Standard

In its review of the Commissioner's decision, the court asks whether the ALJ's factual findings are supported by substantial evidence—that is, by the type of evidence that a reasonable person would accept as adequate support for the ALJ's conclusions. *Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004). The court will remand the case for further proceedings if the ALJ's decision lacks evidentiary support, if it is not clear enough to permit meaningful review, or if it fails to confront and explain contrary evidence. *Indoranto v. Barnhart*, 374 F.3d 470, 474 (7th Cir. 2004); *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002). If the ALJ's decision is adequately explained, however, the court must affirm it "so long as . . . reasonable minds could differ concerning whether the claimant is disabled . . . ." *Schmidt v. Astrue*, 496 F.3d 833, 842 (7th Cir. 2007) (citation and internal punctuation omitted).

The determination of whether an individual is disabled under the Social Security Act proceeds in five steps. First, the claimant must not be engaged in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). Second, the claimant must have medical impairments that are "severe,"

5

meaning that the impairment significantly limits her ability to do basic work activities. *Id.* §§ 404.1520(a)(4)(ii), 404.1521. Third, if the claimant's impairment meets or exceeds one of those enumerated in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, App. 1., the claimant will be found disabled. *Id.* § 404.1520(a)(4)(iii) & (d). Fourth, if the claimant can still do past relevant work, she will not be found disabled. *Id.* § 404.1520(a)(4)(iv). Finally, if the claimant can make an adjustment to perform other work, she will not be found disabled; if, however, such an adjustment is not possible, she will be found to be disabled. *Id.* § 404.1520(a)(4)(v).

## III.     The Credibility Finding

As described above, the ALJ found that Massey was not gainfully employed, but then concluded that her impairments were not severe. Thus, the dispute in this case focuses on the ALJ's Step Two findings, which are based largely on the ALJ's conclusion that Massey's testimony regarding the severity of her illness was not credible. Because the ALJ, unlike this court, was able to observe Massey's demeanor, her credibility finding must be upheld so long as it has "some support in the record." *Schmidt*, 496 F.3d at 843 (citation and punctuation omitted). In other words, Massey must show that the ALJ's finding on this issue was "patently wrong." *Id.* (citation and punctuation omitted).

The ALJ's determination that Massey was not credible was based on her observation of Massey's demeanor at the hearing, and also on the lack of any corroborating medical evidence. (R. at 13-14.) To rebut this finding, Massey points out that the ALJ discussed Dr. Garg's conclusion that she had no physical limitations, but that the ALJ did not discuss the doctor's comment on the same page that Massey suffered from "[r]ecurrent or persistent fatigue." (Pl.'s Mem. at 9; R. at 118.) Massey argues that this discrepancy proves that the ALJ failed to consider the entire case record in evaluating her credibility, as is required by Social Security Ruling 96-3p. (Pl.'s Mem. at 9.) She also points to other places in the same physician's report that she argues corroborate her testimony. (*Id.* at 10.)

6

These arguments avail her little. Dr. Garg's report was written in April 2004, more than eight months before the claimed onset of Massey's disability. (R. at 120.) As such, it does not buttress Massey's testimony that she became disabled in January 2005. Dr. Garg's conclusions—that Massey suffered recurrent or persistent fatigue, but that she was not limited in her ability to engage in physical activity (R. at 118)—are consistent with the ALJ's conclusion that Massey was not disabled in early 2004.[6] Nor does this document, or anything else in the record, rebut the ALJ's conclusion that Massey offered no medical evidence suggesting a change in her condition after Dr. Garg's report was completed. Thus, Massey has failed to show that the ALJ erred by concluding that she was not credible.

## IV. The ALJ's Conclusion that Massey Was Not Severely Impaired

Massey attacks the ALJ's conclusion that she did not have a severe impairment, arguing that her testimony and the medical evidence suggest otherwise. (Pl.'s Mem. at 8-12.) The court must affirm the ALJ's decision so long as it is supported by substantial evidence, and cannot remand solely because of a reasonable disagreement with the ALJ's determination. *Schmidt*, 496 F.3d at 841-42.

As discussed above, the ALJ properly determined that Massey's description of her own symptoms was not believable. Furthermore, the medical evidence offered by Massey covering the period in which she claims to have become disabled gave no indication of any worsening of her diabetes, or any sudden onset of severe fatigue or other limitations. (*See* R. at 133-147.) Massey's charts did indicate that her diabetes was not well controlled (R. at 142), but this does not prove that she was as severely impaired as she claims to have been. More tellingly, the medical record

---

[6] There is a minor discrepancy between the date of Dr. Garg's report, which was April 12, 2004, and the ALJ's statement that "[Massey's] treating physician indicated in February 2004 that the claimant has no physical limitations . . . ." (R. at 14, 118.) The ALJ does cite to the relevant page of Dr. Garg's April report, however, indicating that it was this report that the ALJ meant to reference.

specifically contradicts Massey's claim that she suffered from debilitating knee and back pain: every time that Massey's pain levels were noted on her charts from January through July of 2005, the level recorded was a zero on a 0-10 scale. (R. at 136-37, 140-41, 145, 147, 149.) The ALJ reasonably concluded that these records supported the conclusion that Massey was not severely limited by diabetes, and this court must affirm that conclusion.

## **CONCLUSION**

For the reasons stated above, the Commissioner's determination that Massey was not entitled to disability benefits is affirmed. Massey's motion for summary judgment [12] is denied, and the Commissioner's motion for summary judgment [14] is granted.

ENTER:

Dated: July 2, 2008

_____
REBECCA R. PALLMEYER
United States District Judge